

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 2 3 2017

Fairhurst, C.J.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Feb 23, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

VICTOR M. ZANDI, JR.,

                    Petitioner,

        and

DEANNA M. ZANDI,

                    Respondent.

NO. 92296-9

EN BANC

Filed    FEB 2 3 2017

STEPHENS, J.—This case asks if out-of-network health care costs qualify as "'[u]ninsured medical expenses'" under RCW 26.18.170(18)(d). Victor and Deanna Zandi's dependent daughter, T.Z., incurred approximately $13,000 in medical bills when she had a kidney stone removed while traveling outside the Kaiser Permanente network. The superior court ordered Victor Zandi to pay 75 percent of the cost and Deanna Zandi to pay the remaining 25 percent. The Court of Appeals reversed, finding that the superior court abused its discretion by modifying the parties' 2009

order of child support, which required Victor Zandi to pay 100 percent of "uninsured medical expenses." *In re Marriage of Zandi*, 190 Wn. App. 51, 52, 357 P.3d 65 (2015).

We affirm the Court of Appeals. The legislature defines "'[u]ninsured medical expenses'" as costs "not covered" by insurance. RCW 26.18.170(18)(d). WAC 388-14A-1020 clarifies that this includes costs "not paid" by insurance, even if those costs would be covered under other circumstances. Because the health care expenses in this case are unambiguously within the scope of RCW 26.18.170(18)(d), financial responsibility is allocated by the 2009 order and may not be modified absent evidence of changed circumstances or other evidence consistent with the requirements of RCW 26.09.170(6)-(7).

FACTS AND PROCEDURAL HISTORY

T.Z. is the daughter of Deanna and Victor Zandi.[1] In June 2011, T.Z. developed a four millimeter stone in her left kidney. The following month, while visiting her maternal aunt in Ohio, T.Z.'s condition worsened. T.Z. was admitted to a hospital in the Cincinnati area, where doctors installed a temporary stent. T.Z.'s surgeon referred her to the Urology Group in Cincinnati to have the kidney stone removed via lithotripsy.

---

[1] Because the parties share the last name Zandi, we use their first names for clarity, with no disrespect intended.

Lithotripsy uses ultrasound shock waves to break up a stone, allowing it to be passed from the body.

T.Z. has medical insurance through her father's plan with Kaiser. Kaiser is not available in the Cincinnati area. T.Z.'s aunt lives in Goshen, a suburb of Cincinnati in southwestern Ohio; the closest Kaiser facility is near Cleveland, 186 miles to the northeast. When Deanna contacted Victor to advise him of T.Z.'s situation, Victor told her that T.Z.'s aunt should either drive T.Z. to Cleveland or wait to see if Kaiser would authorize an out-of-network provider. Deanna disagreed, believing T.Z. needed immediate surgery. T.Z.'s aunt took her to the Urology Group in Cincinnati on July 7, 2011, where doctors used lithotripsy to successfully treat T.Z.'s kidney stone. Medical expenses for T.Z.'s time in Ohio totaled approximately $13,000. Concluding that T.Z.'s treatment was both nonemergent and out of network, Kaiser ultimately declined to cover these costs.

Under the terms of the Zandis' 2009 order of child support, Victor is responsible for providing T.Z. with medical insurance and paying any uninsured medical expenses. Paragraph 3.19 states, "The father shall pay 100% of uninsured medical expenses and the mother shall pay 0% of uninsured medical expenses . . . ." Clerk's Papers (CP) at 7. Deanna sought enforcement of this provision under RCW 26.18.170. *See* Resp't's Suppl. Br. at 10-13. Victor argued that he should be excused from the terms of the child

support order because Deanna did not "go through the appropriate channels" (i.e., obtain preauthorization before sending T.Z. to a non-Kaiser facility). CP at 207. The trial court found that Deanna's status as primary residential parent put her in a "better position to secure coverage for the kidney stone treatment by Kaiser Permanente" and ordered Deanna to pay 25 percent of the medical costs. *Id.* at 247.

A divided Court of Appeals reversed, finding that because T.Z.'s medical costs were "'[u]ninsured medical expenses'" under RCW 26.18.170(18)(d), paragraph 3.19 of the 2009 order controlled the allocation of financial responsibility. *Zandi*, 190 Wn. App. at 54-55. The majority acknowledged the dissent's concern that a parent with control over a child's health care could unfairly subject the financially responsible parent to unnecessary out-of-network expenses. *Id.* at 56-57. Noting that nothing in the record before the superior court suggested Deanna acted in bad faith or unreasonably, the majority held that the lower court abused its discretion by effectively modifying the 2009 order of child support without adequate cause. We granted Victor's petition for review. *In re Marriage of Zandi*, 185 Wn.2d 1002, 366 P.3d 1244 (2016).

ANALYSIS

Victor argues that the health care costs in this case were not "uninsured medical expenses" within the scope of the 2009 order of child support because the health care T.Z. received would have been covered by Kaiser under different circumstances. Pet.

for Review at 7. We disagree, and affirm the Court of Appeals. Reading RCW 26.18.170(18)(d) and its interpretive regulation in the context of chapter 26.18 RCW, "uninsured medical expenses" unambiguously includes the costs Kaiser declined to cover in this case. *See* WAC 388-14A-1020. By contrast, the narrow interpretation of "uninsured medical expenses" advanced by Victor and the dissenting Court of Appeals judge reads RCW 26.18.170(18)(d) out of context and runs contrary to the core purpose of chapter 26.18 RCW.

Chapter 26.18 RCW governs the enforcement of child support orders. Under that chapter, one parent's financial responsibility for a dependent child's medical expenses can be enforced by the other parent. *See* RCW 26.18.170. Specifically, RCW 26.18.170(17) states:

> If a parent required to provide medical support fails to pay his or her portion . . . of any premium, deductible, copay, or *uninsured medical expense* . . . the parent seeking reimbursement of medical expenses may enforce collection of the obligated parent's portion.

(Emphasis added.) The legislature, recognizing the importance of ensuring that child support obligations are met, instructed courts to "liberally construe[]" chapter 26.18 RCW in order to "assure that all dependent children are adequately supported." RCW 26.18.030(3). Here, the 2009 order of child support states that Victor is financially responsible for 100 percent of his daughter's uninsured medical expenses. CP at 7. Because the superior court reduced Victor's financial burden to 75 percent, this case

turns on whether the medical bills T.Z. incurred while in Ohio qualify as "uninsured medical expenses" under RCW 26.18.170.

Statutory interpretation involves a question of law, subject to de novo review. *See, e.g., Clallam County v. Dry Creek Coal.,* 161 Wn. App. 366, 385, 255 P.3d 709 (2011). The purpose of our inquiry is to identify and give effect to the legislative intent behind the statute. *Jametsky v. Olsen,* 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). If the plain meaning of a statute is unambiguous, our inquiry ends. *Id.* When attempting to ascertain a statute's plain meaning, we consider the "context of the entire act" as well as related statutes. *Id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

### A. The Medical Costs in This Case Are Unambiguously "Uninsured Medical Expenses" under RCW 26.18.170

This case presents a straightforward question of statutory interpretation. The Court of Appeals majority correctly recognized that "uninsured medical expenses" under RCW 26.18.170 unambiguously include costs "'not covered by insurance.'" *Zandi,* 190 Wn. App. at 54-55. Because "Kaiser is not covering the disputed medical expenses," these health care costs are "uninsured medical expenses" that the 2009 order obliges Victor to pay. *Id.*

The legislature promulgated chapter 26.18 RCW to meet "an urgent need for vigorous enforcement of child support and maintenance obligations." RCW 26.18.010.

The provision at issue here, RCW 26.18.170(17), furthers this goal in the context of medical expenses. If a financially responsible parent fails to meet his or her obligations, RCW 26.18.170(17) allows either the State or the other parent to enforce the child support order. This applies specifically to the "obligated parent's portion of the premium, deductible, copay, or uninsured medical expense incurred on behalf of the child." *Id.* The legislature defined "'[u]ninsured medical expenses'" as "premiums, copays, deductibles, *along with other health care costs not covered by insurance.*" RCW 26.18.170(18)(d) (emphasis added).

The meaning of the phrase "along with other health care costs not covered by insurance" is clear and unambiguous: it means costs the insurer declines to cover. Since Kaiser declined to pay T.Z.'s medical expenses, those expenses were "costs 'not covered by insurance.'" *Zandi*, 190 Wn. App. at 55. Any potential ambiguity is resolved by reading RCW 26.18.170(17) and (18)(d) in their statutory context.

The interpretation advanced by Victor and the Court of Appeals dissent requires distinguishing medical costs that are "not covered" from those that are merely unpaid. *See* Pet. for Review at 7; *Zandi*, 190 Wn. App. at 56-57. According to the dissent, "'premiums, copays, [and] deductibles'" are specific costs Kaiser "never promised to pay," and thus the general phrase "'other health care costs *not covered* by insurance'" should apply only to other health care costs Kaiser did not promise to pay. 190 Wn.

App. at 56-57 (quoting RCW 26.18.170(18)(d)). Such a narrow construction of RCW 26.18.170(18)(d) runs contrary to the legislature's directive that chapter 26.18 RCW must be "liberally construed." RCW 26.18.030(3). The motivating principle in chapter 26.18 RCW is to ensure that dependents are "adequately supported," *id.*, which means that children actually receive the health care they need. To achieve this purpose, the scope of RCW 26.18.170(17)'s enforcement power must be at least as broad as Victor's medical support obligations. By removing out-of-network provider charges from the scope of RCW 26.18.170, Victor's interpretation would undermine the statute's ability to guarantee that children receive health care regardless of the circumstances.

The narrow analysis advanced by Victor and the Court of Appeals dissent also ignores the regulatory definition of "'uninsured medical expenses.'" WAC 388-14A-1020 (boldface omitted). The regulation clarifies that medical costs "not paid" by insurance qualify as "'uninsured medical expenses.'" *Id.* (boldface omitted). The expenses in this case were indisputably not paid by Kaiser. Thus, reading RCW 26.18.170(18)(d) alongside the applicable regulation clarifies that medical expenses "not paid" by insurance and costs "not covered" by insurance qualify as "uninsured medical expense[s]" under RCW 26.18.170(17). WAC 388-14A-1020. Because the medical expenses in this case were neither "covered" nor "paid," they are unambiguously "uninsured medical expense[s]" in the context of RCW 26.18.170(17).

B. Consideration of the Parties' Relative Fault Is Inappropriate in Enforcing Child Support Orders

In accepting Victor's narrow interpretation of "uninsured medical expenses," the Court of Appeals dissent expressed a concern for "[b]asic fairness." *Zandi*, 190 Wn. App. at 57. The dissenting judge criticized the majority for requiring Victor to "pay 100 percent of this large medical bill, even though . . . Victor was not responsible for violating [Kaiser's] in-network limitation." *Id.* This analysis incorrectly introduces concepts of marital fault into the enforcement of a child support order.

In general, marital fault is irrelevant in proceedings relating to divorce. *See, e.g.*, RCW 26.09.090(1) (excluding spousal "misconduct" from the calculation of maintenance orders); *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991) (noting that "immoral" conduct may not be considered in dividing property). Generally, absent a showing of changed circumstances to justify modification, a child support order must be enforced according to its terms. *See* RCW 26.09.170(5)-(7). We certainly acknowledge the possibility that "a parent with control over his or her child's medical care could boundlessly violate the insurance plan's in-network limitation with knowledge that the other parent would be forced to absorb the resulting costs." *Zandi*, 190 Wn. App. at 57. But there is no evidence of bad faith or unreasonable conduct by either parent in this case. The superior court made no findings as to fault. *See* CP at 246-47. Indeed, the record shows that before incurring the out-of-network expenses,

Deanna asked Victor's permission, contacted Kaiser to request coverage, and was assured by the Urology Group doctor that Kaiser would pay for the procedure.[2] *Id.* at 43-44.

Underlying the "basic fairness" argument seems to be the belief that the parent paying for a child's health care should be able to insist on the most cost-effective care, as the nonpaying parent has little incentive to avoid unnecessary expenses. *See Zandi,* 190 Wn. App. at 57. This argument overlooks the premise that parenting authority is a fundamental right and is not based on financial responsibility. *See, e.g., Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion) (recognizing that the due process clause of the Fourteenth Amendment to the federal constitution protects the fundamental parenting rights of each spouse). By assigning financial responsibility for T.Z.'s health care to Victor, the 2009 order of child support did not in any way limit Deanna's right to make parenting decisions as the primary residential parent. From Victor's perspective, the outcome may seem "unfair," but it is not difficult to imagine the complications that would arise if courts recognized the "right" of a paying parent to interfere with the other parent's authorized

---

[2] Because there was no finding of bad faith in this case, CP at 246-47, our holding in no way limits a trial court's discretion to fashion a result that comports with fundamental fairness. A trial court presented with evidence of bad faith could, for example, reasonably conclude that a party acting in bad faith constitutes changed circumstances. *See* RCW 26.09.170(5), (6), (7).

decision-making. Moreover, concerns of fault or unfairness to the paying parent cannot influence the proper interpretation of "uninsured medical expenses" within the meaning of RCW 26.18.170. Out-of-network costs—even those that could have been avoided— remain "uninsured medical expenses," and the parties' child support order allocates 100 percent of these expenses to Victor.

## CONCLUSION

The Court of Appeals correctly determined that unpaid, out-of-network health care costs are "uninsured medical expenses" under RCW 26.18.170. When read in light of chapter 26.18 RCW's purpose and alongside WAC 388-14A-1020, the legislature's definition in RCW 26.18.170(18)(d) unambiguously encompasses the out-of-network expenses that Kaiser declined to cover. Because the medical expenses in this case fall within the scope of "uninsured medical expenses," Victor is obligated to pay 100 percent of the costs by the terms of the 2009 order of child support. By modifying the terms of this order without evidence of changed circumstances, *see* RCW 26.09.170(5), or other evidence justifying modification, *see* RCW 26.09.170(6)-(7), the superior court abused its discretion. We affirm the Court of Appeals.

_____
Stephens, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Madsen, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.